1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DALE W. HART,

               Plaintiff,

     v.

MICHAEL ASTRUE, Commissioner of
Social Security Administration,

             Defendant.

CASE NO.    **C07-5536FDB**

REPORT AND
RECOMMENDATION

Noted for May 30, 2008

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administrative decision.

<u>INTRODUCTION</u>

Plaintiff, Dale Hart, was born in 1953. He has a high school equivalency diploma (GED) (Tr. 22). Medical records document a long history of drug and alcohol abuse, allegedly in remission since 2001. In 2005, however, Plaintiff reported that he occasionally used marijuana, which he obtained from "friends" (Tr. 439). He explained that he is unable to work due to constant joint pain, difficulties lifting more than a gallon of milk, severe limitations in sitting and standing, chronic neck pain, breathing problems, numbness in his hands, and depression (Tr. 429-432, 455). Plaintiff does not take any pain medication for his various aches and pains, however, or any psychiatric medication for his mental concerns (Tr. 454-55).

He testified that he has supported himself over the years by doing odd jobs and living off girlfriends (Tr. 427). His earnings record reveals no reported earnings since 1994 and no earnings in any given year above $5.600.00 (Tr. 382-383).

Plaintiff filed an application for supplemental security income ("SSI") on October 31, 2002 (Tr. 62-65). He alleged disability since September 1, 1994, due to right arm pain, carpal tunnel syndrome, chronic bronchitis/emphysema, a personality disorder and dysthymia (Tr. 62). After the application was denied initially and upon reconsideration, plaintiff requested an ALJ hearing. This hearing occurred on February 7, 2005 before an administrative law judge ("ALJ") (Tr. 418-445). On April 1, 2006, the ALJ issued a decision which provided that plaintiff is not disabled and is capable of performing a significant range of light work (Tr. 347-357). On December 6, 2005 the Appeals Council remanded for further administrative proceedings to obtain evidence from a vocational expert, address the lay witness' statement and further evaluate plaintiff's subjective complaints (Tr. 358-360). On May 16, 2006, a second hearing was conducted by the ALJ( Tr. 446-472), and on October 24, 2006, the ALJ  issued an unfavorable decision finding plaintiff not disabled and capable of a significant range of light work (Tr. 19-33). The ALJ's decision became the final administrative decision after the Appeals Council declined review on September 18, 2007 (Tr. 4-6).

Plaintiff filed the instant Complaint with the Court on September 30, 2007,  challenging the denial of his applications for social security supplemental income benefits. Specifically, Plaintiff contends: (1) the ALJ erred by rejecting opinions from Dr. Corpolongo; (2) the ALJ erred by rejecting opinions from Dr. Neims; (3) the ALJ erred by incorrectly assessing Plaintiff's residual functional capacity ("RFC"); and (4) the ALJ failed to show Plaintiff is capable of working other jobs within the national economy. After reviewing the record, the undersigned finds the ALJ properly considered the threshold issue, i.e., the ALJ properly weighed the  medical opinion evidence.  Accordingly, the ALJ's decision is properly supported by substantial evidence and free of legal error.

<u>DISCUSSION</u>

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, Plaintiff contends the ALJ improperly evaluated the medical evidence, particularly the opinions and records  provided by Dr. Corpolongo and Dr. Neims.   After reviewing the record, the undersigned finds no error in the ALJ's decision.  The opinions of each of these two psychologists, as well as the ALJ's analysis is discussed below.

Dr. Corpolongo examined Plaintiff the first time in March 2001, as part of his application for state general assistance benefits (Tr. 134). At the time, Plaintiff told Dr. Corpolongo that he dropped out of school "because he was too smart" (Tr. 134). He also described a long-history of drug and alcohol abuse, and admitted that he continued to smoke marijuana (Tr. 134-136). Although he described some anxiety, Plaintiff was not taking any medication for this condition, and felt he did not need mental health treatment (Tr. 137).   Testing was within normal limits (Tr. 134). Dr. Corpolongo diagnosed cannabis dependence, a

1  personality disorder NOS, and an anxiety disorder (Tr. 135). He added that Plaintiff's drug and alcohol

2  abuse may be the basis of his mental health issues (Tr. 136).  With regard to Plaintiff functional capacity,

3  Dr. Corpolongo identified mild and moderate limitations in Plaintiff's ability to follow simple

4  instructions, interact appropriately with coworkers and the public, engage in self care, and control his

5  physical or motor movements (Tr. 136). Marked limitations were similarly assessed with regard to

6  Plaintiff's ability to tolerate the pressures and expectations of a normal work setting, learn new tasks, and

7  perform routine tasks (Tr. 136). Dr. Corpolongo noted a severe limitation in Plaintiff's ability to exercise

8  judgment and make decisions (Tr. 136).

9          Three months later, in June 2001, Plaintiff returned to Dr. Corpolongo for another evaluation

10  connected to his receipt of general assistance benefits (Tr. 138). Plaintiff again characterized himself as

11  "too smart for school" and admitted that he was currently using alcohol and marijuana, even though he

12  was on probation related to a domestic violence charge (Tr. 139).  He also reiterated that he continued to

13  refrain from taking any medications (Tr. 140). Dr. Corpolongo again noted functional limitations, but this

14  time added marked limitations in Plaintiff's ability to perform self-care and to control his physical or

15  motor movements (Tr. 140).  Alcohol dependence was similarly included in the diagnostic assessment

16  (Tr. 139).

17          Another five months elapsed before Plaintiff returned to Dr. Corpolongo in November 2001 for an

18  updated evaluation (Tr. 144). At the time, Plaintiff had recently been released from jail, and was enrolled

19  in substance abuse treatment (Tr. 144). Testing was within normal limits, and Plaintiff's IQ was assessed

20  at 88 (Tr. 144). Dr. Corpolongo's functional assessment was again different than his prior assessments,

21  this time revealing no severe limitations at all, marked limitations in only a few areas, and moderate to

22  mild limitations in most other areas, including Plaintiff's ability to understand, remember, and follow

23  simple and complex instructions; perform routine tasks; and relate appropriately to coworkers,

24  supervisors, and the public (Tr. 146).

25          The last time Plaintiff saw Dr. Corpolongo was in April 2002 when again, Dr. Corpolongo noted

26  Plaintiff's IQ at 88 and testing was within normal limits (Tr. 150).  Plaintiff reported at the time that he

27  had just left drug and alcohol treatment, although he continued to have strong cravings for crack cocaine

28  (Tr. 152). Plaintiff similarly admitted that he had used alcohol since 2001, but denied any marijuana use

1    since March 2001, contrary to his reported use in June 2001 (Tr. 139, 151). According to Plaintiff, he was

2    still not taking any medications for his alleged mental and physical problems (Tr. 152). Consistent with

3    his immediate prior evaluation, Dr. Corpolongo assessed no severe functional limitations, but found

4    marked limitations in Plaintiff's ability to understand, remember, and follow complex instructions;

5    exercise judgment and make decisions; perform routine tasks; and engage in self-care (Tr. 152).  Mild to

6    moderate limitations were assessed in all other areas, however, including in Plaintiff's ability to

7    understand, remember, and follow simple instructions; learn new tasks; relate appropriately to coworkers

8    and supervisors; interact appropriately with the public ("no problem" according to Dr. Corpolongo);

9    engage in self-care; and control physical and motor movements (Tr. 152).

10          In September 2002, Plaintiff was evaluated by Dr. Neims, as part of his receipt of general

11   assistance benefits (Tr. 168). Dr. Neims observed that Plaintiff was friendly and cooperative throughout

12   the interview, dressed appropriately, and appeared logical, lucid, and coherent (Tr. 168). According to Dr.

13   Neims, Plaintiff emphasized his ongoing medical problems, and described his history of drug and alcohol

14   abuse, now in reported remission for over a year (Tr. 168). Plaintiff also told Dr. Neims that he had tried

15   to find employment, but it was difficult to do so in a rural setting (Tr. 169). He identified his daily

16   activities as including doing laundry and occasionally eating meals with his parents (Tr. 169).  Dr. Neims

17   observed that testing revealed no memory deficits and very few vegetative symptoms (Tr. 173).  He

18   diagnosed Plaintiff with methamphetamine dependence in reported remission; alcohol abuse in reported

19   remission; dysthymia; and a personality disorder NOS (Tr. 173). A global assessment of functioning

20   (GAF) score of 55 was also assessed, with the highest GAF in the past year at 57 (Tr. 173). As part of his

21   recommendation, Dr. Neims added that Plaintiff would benefit from vocational rehabilitation and

22   continued outpatient mental health treatment (Tr. 174).

23          Approximately three years later Plaintiff returned to Dr. Neims for another mental evaluation (Tr.

24   386).  At the time, Dr. Neims noted that Plaintiff detailed ongoing problems with chronic pain, but that he

25   had not undergone any recent medical treatment (Tr. 386). Plaintiff similarly admitted that he had not

26   been taking prescribed blood pressure medication, or any other medications (Tr. 386, 390). Dr. Neims

27   noted Plaintiff's reported ongoing sobriety, as well as his admission that he last used marijuana several

28   months earlier (Tr. 388-389). With regard to assessed functional limitations, Dr. Neims identified only

REPORT AND RECOMMENDATION
Page - 5

mild limitations in Plaintiff's ability to understand, remember, or follow simple or complex instructions; and learn new tasks (Tr. 390). Moderate limitations were assessed with regard to Plaintiff's ability to exercise judgment and make decisions, as well as perform routine tasks (Tr. 390). Social limitations were noted to be moderate to marked, with marked restrictions in Plaintiff's ability to work with coworkers, supervisors, and the general public; and in his ability to tolerate the pressures and expectations of a normal work setting (Tr. 390). Moderate limitations in Plaintiff's ability to engage in self-care and control physical and motor movements were similarly identified (Tr. 390).

Here, the ALJ discussed the "multiple DSHS evaluations in the record", properly noting that they did not relate to Plaintiff's condition "in a period not considered in this decision" (Tr. 29). As noted above, the DSHS reports by Dr. Corpolongo and Dr. Neims included psychological evaluations primarily dating from March 2001 through September 2002. Here, Plaintiff filed his application on October 31, 2002; thus, his complete medical history as defined by the regulations included records beginning October 31, 2001. Accordingly, the ALJ's determination not to give great weight to medical records prior to October 31, 2001 – including reports from 2000, as well as evaluations performed by Dr. Corpolongo in March and June 2001 – was appropriate and consistent with the regulations. 20 C.F.R. § 416.912(d)(2).

Furthermore, contrary to Plaintiff's contentions, the ALJ did, in fact, specifically consider Dr. Corpolongo's June 2001 and April 2002 evaluations, and noted that these evaluations provided a probative, longitudinal history of Plaintiff's functioning (Tr. 29). "Although longitudinal records showing regular contact with a treating source are the most desirable, longitudinal medical records can be valuable even when they are not treating source records." The ALJ observed, for example, that in his fourth examination, Dr. Corpolongo documented Plaintiff's improved functioning with treatment by assessing no severe functional limitations, and only mild to moderate limitations in most other areas (Tr. 150-156). A contemporaneous mental status examination similarly documents Dr. Corpolongo's observation that Plaintiff exhibited only mild to moderate limitations in performing his daily activities, and he reported being able to spend time pursuing building models and making jewelry (Tr. 156). The ALJ interpreted Dr. Corpolongo's most recent medical reports to highlight Plaintiff's improved functioning with treatment, a finding that is consistent with Dr. Neims' observations, as well as the opinions of Dr. Collingwood (discussed below).

With specific regard to Dr. Neims, the ALJ discussed several specific reasons he did not adopt the medical opinion, including because they were in a check-box format, his GAF assessment indicated only moderate limitations, he failed to address discrepancies in Plaintiff's self-reports (Plaintiff's credibility is an issue), and because there were internal inconsistencies in Dr. Neims' reports (Tr. 30).  The ALJ's analysis is properly supported by the record.  For instance, Dr. Neims stated Plaintiff had a significant problem relating to others, but the ALJ questioned this opinion, noting "Dr. Neims appeared to be unaware that the claimant had a girlfriend" (Tr. 30),  Plaintiff also had a "best friend," as well as a girlfriend (Tr. 26), and Plaintiff testified that he occasionally obtains marijuana from "friends" (Tr. 439).  Significantly, the ALJ also noted, in detail,  Plaintiff's inconsistency reports and testimony, which Dr. Neims's opinion relied upon.  "Credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

The ALJ provided multiple clear and convincing reasons for rejecting Plaintiff's testimony and the statements reported to Dr. Neims. The ALJ noted the following factors: Plaintiff's poor work history (Tr. 28), Plaintiff's poor work ethic, lack of earnings, and lack of propensity to work in his lifetime (Tr. 28), Plaintiff's lack of treatment (Tr. 28),  large gaps in treatment, especially between August 2003 and July 2004(Tr. 28),  lack of candor about drug and alcohol abuse (Tr. 28), and Plaintiff's daily activities, including the ability to do housework, grocery shop, cook, use public transportation, attend medical appointments, build models, make jewelry, and read (Tr. 28).  Plaintiff does not challenge the ALJ's credibility finding.

The ALJ properly weighed the medical evidence and relied on the opinion of Dr. Collingwood to base Plaintiff's residual functional capacity.  In December 2002, Dr. Collingwood, reviewed Plaintiff's medical records, as well as questionnaires regarding Plaintiff's activities, and Dr. Corpolongo's and Dr. Neims' earlier evaluations (Tr. 195), and she identified only mild mental impairment-related limitations in Plaintiff's activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, pace, and persistence, and no episodes of decompensation (Tr. 207).  On a companion Mental Residual Functional Capacity (MRFC) worksheet, Dr. Collingswood assessed Plaintiff as not

significantly limited or only moderately limited in various mental activities, including understanding and memory; sustained concentration and persistence; social interaction; and adaptation (Tr. 193-195).  In a narrative assessment, Dr. Collingwood concluded that Plaintiff was able to follow one- to two -step instructions and was capable of concentrating for up to two hours at a time as evidenced by his ability to attend medical appointments; complete a two-hour psychological evaluation; prepare his own meals; do his own laundry, clean his living area; use public transportation; watch television for up to six hours at a time; go shopping; and read (Tr. 195). Dr. Collingwood also observed that Plaintiff exhibited a good performance on mental status examination, and she found significant that Dr. Neims believed Plaintiff would benefit from vocational rehabilitation (Tr. 196). Based on these various factors, Dr. Collingwood assessed Plaintiff's mental RFC as including the capacity to perform basic and repetitive work activities, with few or slowly implemented changes (Tr. 196). She also opined that Plaintiff should not work around the general public, but could work with a few supervisors and coworkers, as evidenced by his ability to cooperate with medical personnel and use public transportation (Tr. 196).

The ALJ properly preferred the opinion of State agency physician, Dr. Collingwood, whose opinion was consistent with the objective evidence and Plaintiff's reported activities (Tr. 367-70). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, available at 1996 WL 374180.  In fact, a non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record supports those findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Andrews v. Shalala, 53 F.3d 1035, 1041(9th Cir.1995); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). Plaintiff argues for a more favorable interpretation of the medical evidence. However, the ALJ's interpretation was reasonable and properly supported.  "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should affirm administrative decision.  After reviewing the record, the undersigned finds no error in the threshold issue – the ALJ's evaluation of the medical opinion evidence. Accordingly, the undersigned also finds no error in the ALJ evaluation of

Plaintiff's residual functional capacity or the ALJ's finding that Plaintiff retains the ability to perform other certain types of work within the national economy.  Plaintiff's arguments that the ALJ erred in those findings is erroneously premised on the arguments that the ALJ failed to properly review the medical evidence.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 30, 2008**, as noted in the caption.

DATED this 7th day of May, 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge